Brinkerhorr, J.
On the 18th of March, 1864, an alternative writ of mandamus issued from this court to the Zanesville and Maysvilie Turnpike Road Company, as follows:
“Whereas, It hath been related to the Supreme Court of the State of Ohio, by the board of county commissioners of the county of Ross', in said state—
“ That, on Juno 15, 1838, the board of county commissioners of said county, being sezed in fee of a certain bridge across the Scioto river, at the city of Chillicothe, in said county, by an article of agreement of that date, sold the same to you, the Zanesville and Maysville Turnpike Road Company, a corporation created under the laws-of said state, to make a turnpike road from Zanesville, Ohio, to the Ohio river, opposite Maysville, Kentucky, as by reference to your charter more fully appears; which article of agreement is as follows:
“1 Know all men by those presents, that the commissioners of Ross county, Ohio, have on this day, for the consideration of twelve thousand dollars, bargained and sold to the “ Zanesville and Mays-ville Turnpike Road Company,” the bridge across the Scioto river at Chillicothe, together with all lands, tenements, privileges, and appurtenances thereunto belonging or in anywise appertaining, subject, however, to the stipulations, restrictions, conditions, and uses hereinafter mentioned; that is to say: It is the express agreement and understanding of the said parties, and the true intent and meaning of these presents, that the citizens of Ross county, aforesaid, shall forever have the privilege of crossing and rcerossing said bridge, or any extension thereof which may be made by said company, or any new bridge or bridges which may be erected by said company in lieu of the present bridge, on the premisos *aibresaid, without the payment of any toll or rates of any kind or description, upon condition that the commissioners of said county, or the citizens thereof, shall defray one-fourth part of the exjienses *285 which may be necessarily incurred in repairing and rebuilding said bridge, bridges, or buildings, and keeping in repair such new bridge or bridges, as aforesaid; and it is further understood and agreed that any additional stretch that may be necessary for the conjunction of the present bridge on the oast side of the river, with the turnpike aforesaid, shall be in the first place made by and at the expense of the said company, and when made it shall be subject to the same conditions and uses, in all respects, as the other parts of the said bridge. And the said company shall erect no tollgate other than at said bridge or bridges, within one mile of the same on said turnpike road; and the commissioners of Ross county aforesaid, as such commissioners, hereby agree and bind themselves, and their successors in office, to convey said bridge, and the lands, tenements; privileges, and appurtenances thereunto belonging, as aforesaid, unto “The Zanesville and Maysville Turnpike Road Company ” aforesaid, by a good and sufficient deed, covenants of warranty, subject always, and the same shall be so expressed in said deed, to all and singular the stipulations, restrictions, conditions, and uses hereinbefore mentioned, and to the conditions limitations, and restrictions contained in the act of the legislature authorizing,the construction of said bridge. The said deed to be made within twelve months from the date of these presents; and no privileges granted by the act of the legislature aforesaid, which are inconsistent with all and singular the stipulations, restrictions, conditions, and uses aforesaid, are allowed to, or are to be exercised by said company.
“ ‘ Given under our hands and seals this 15th day of June, a. d. 1838.
“ ‘ Witness:
{
“ ‘ Warner Barnes,
“‘Aaron Foster,
“‘Martin Dresback, A. G. Thurman,
Henry S. Lewis.’
seal."
SEAL."
SEAL."

Commissioners of Boss County, Ohio.

“ That, on the same day, said board delivered said bridge to you, said company, and the same has ever since been, and yet is, a part of your road.
*“That you yet exist, are in the enjoyment of your franchises, and collect tolls under your charter.
“ That you, contriving how to get rid of maintaining said bridge, did, by an instrument dated August 23, 1860, and filed in the auditor’s office of said county on September 6, 1860, pretend to release said bridge to said board of commissioners, claiming the right to do so, without their consent, by virtue of the provisions of an act of the general assembly entitled ‘ an act to provide for the surrender or transfer of turnpike or plank-roads,’ passed April 17,1857, which pretended transfer is as follows:
“ ‘ Know all men by these presents, that the Zanesville and Mays-ville Turnpike Road Company, in conformity with the provisions *286 of an act of the general assembly of the State of Ohio, entitled ‘ an act to provide for the surrender or transfer of turnpikes or plank-roads,’ passed April 17, 1857, and by virtue of the authority of the same, do hereby relinquish and transfer to the county commissioners of Ross county, in the State of Ohio, all that part of their turnpike road, right of way therefor, bridges, structures, and appurtenances thereto belonging-, situate within the corporate limits of the city of Ohillicothe, and northwardly from said limits with the lino of said turnpike road to a point at which the north side of the Marietta road, so called, intersects said turnpike road; said point of intersection being north of the bridge across the Scioto river at Chillicothe, and distant about seventeen rods northwardly from the north abutment of said bridge, together with all rights and privileges appertaining thereto; the said premises, hereby relinquished and transferred, being within the county of Ross aforesaid. In testimony whereof this written declaration is signed by the president and secretary of said company; and the seal of said company is hereto affixed, at Lancaster, Ohio, this twenty-third day of August, a. d. 1860, pursuant to a resolution of the board of directors of said company, for this purpose had and made.
“1H. H. Hunter,
[seal.]
“ ‘ President Zanesville and Maysville T. P. Co. “ ‘ P. B. Ewing,
Secretary Z. and M. T. P. Go.’
*“That said board of commissioners refused to consent to, or accept said pretended relinquishment, and never have consented to or accepted the same. That they rejected the same as soon as it was filed in said auditor’s office, as more fully appears from the following transcript from their journal:
“ ‘ County Commissioners’ Oeeice, Ross Co,, O., \
“ Ohillicothe, Thursday, September 6, 1860.
j
“1 The board met pursuant to adjournment. Present—Samuel McAdow and Daniel Karshner, commissioners, and William B. Franklin, auditor, and clerk to the board. The auditor laid before the commissioners two papers, which were this day filed in the auditor’s office by Mr. Myers, superintendent of the Zanesville and Maysville Turnpike Road Company; which papers were read. 1. A relinquishment of part of said Z. & M. Turnpike road (including Scioto bridge at Ohillicothe) to the commissioners of Ross county, said relinquishment or declaration being signed by the president and secretary of said company. 2. A written opinion of Thomas Ewing in relation to said relinquishment under the statute. Yol. 54, page 198, Ohio Laws. The commissioners direct the entry to be made here, ‘ that they do not give their assent to the proposed transfer of said part of said road to them, believing that the statute, as construed by Mr. Ewing, is in violation of the contract made be *287 tween the said turnpike road, company and the commissioners of Ross county, in relation to the repair of said bridge.’ ”
“ The said act of assembly conferred no power upon you to relinquish said bridge to said commissioners without their assent, and that said pretended instrument of release is a nullity.
“ That said bridge has been for some time past, and now is, so much out of repair as to make it dangerous to travel over it, and unless soon repaired, it will probably fall down; that it is now unsafe, and is getting more so from day to day. Of all which you have been, and arc, fully aware.
“ That it is your corporate duty, and also your duty by reason of the premises, to keep and maintain said bridge in good repair and safe condition for use.
*!tThat said commissioners have called your attention to the unsafe condition of said bridge, and required you to repair the same, offering to pay one-fourth of the expense thereof, according to said agreement of sale. That they have oven offered to you to make the repairs themselves upon the joint account of you and said county, in the proportions specified in said agreement, if you would consent; or, to go on and make them, leaving the question of liability of the parties to bo settled by amicable litigation, if you would consent. All which propositions you have rejected. That you wrongfully and illegally }:>retend that you have no interest, as owner or otherwise, in said bridge, and deny that you are liable in any way to maintain, sustain, keep in repair, or rebuild said bridge, or to contribute toward the same, and decline to enter into any arrangement respecting the same; and that you have so notified said commissioners.
“ To the end, therefore, that justice and right may be done in the premises, you are, by the consideration of the Supreme Court of Ohio, hereby commanded to proceed, without delay, to repair said bridge, and maintain it in a good and safe condition for travel and passage over the same, of persons, horses, cattle, wagons, and vehicles of all sorts, accustomed to travel upon or pass over your said road. Or, that you show cause to said court, at its court-room, in the city of Columbus, Franklin county, Ohio, at 9 o’clock A. m. on Saturday, the 26th day of this present month of March, a. d., 1864, why you fail or refuse so to do. And have you then and there this writ, with your return that you have done as you are hereby commanded.”
To this alternative writ the turnpike company made answer, by way of demurrer, on the ground that the alternative writ does not state facts sufficient to entitle the relators to the remedy sought by mandamus. And the question thus made has been elaborately argued before us, and is submitted for our decision.
It will be seen that the alleged wrong of which the relators corn- *288 plain, and a remedy for which is now invoked through the medium of a peremptory mandamus, is the neglect and ^refusal of the turnpike company to contribute three-fourths of the expense necessary to keep in repair the bridge mentioned in the alternative writ. And the duty of the turnpike company thus to contribute is, by the alternative writ, based on two grounds-—■
1. On the ground of the contract between the relators and the turnpike company which is set forth in the alternative writ.
2. On the ground of corporate duty alleged to be devolved by law on the turnpike company.
I will notice these grounds separately.
And, first’, as to the alleged obligation of the turnpike company to contribute to the keeping in repair of the bridge referred to, arising out of the contract with the relators set forth in the alternative writ.
The jurisdiction of courts in this state, capable of exercise by means of the writ of mandamus, is limited, and the sphere of its operations is—I think, wisely—closely restricted by statute. Section 5G9 of the code of civil procedure provides, that “the writ of mandamus may be issued to any inferior tribunal, corporation, board, or persons, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.” And by section 570: “This writ may not be issued in any case whore there is a plain and adequate remedy in the ordinary course of the law. It may issue on the information of the party beneficially interested.”
Now, granting for the purposes of this case as here presented, the full competency of the parties, and the binding obligation of the contract alleged according to its terms, we look in vain for a duty, specially enjoined by law, “resulting from an office, trust, or station.” Here is no office, no station, no “trust,” within any definition of that term known to the law. It is simply an obligation arising out of a contract. "Whether the parties who assumed to make the alleged contract set forth in the alternative writ, were or were not competent in law to make it, we are not called on to decide, and we do not decide; and whether the relators may or may not have a remedy, according to the ordinary course of the law, *for the breach or for the enforcement of the contract alleged, we are not called on to decide, and we do not decide. But we do decide, that purely contract obligations, involving no trust, can not *289 be enforced by mandamus. If we were to hold otherwise, we would! make the writ of mandamus a substitute for a decree in equity, and thus usurp an original jurisdiction which the constitution of the state has withheld from this court.
2. The writ is demanded on the ground that it is the corporate duty of the turnpike company to keep the bridge in repair.
This position assumes that the attempted transfer and surrender of the bridge to the board of county commissioners, as set forth in the alternative writ, was ineffectual, and that the bridge still remains a part of the turnpike company’s road. And it is contended, in behalf of the relators, that, the assent of the board of county commissioners to the transfer and relinquishment attempted to be made, was necessary to its validity, and that the attempt was of no-effect for the reason that such assent was expressly withheld. The-question thus made depends upon the proper meaning of the act of April 17,1857, “ to provide for the surrender or transfer of turnpikes and plank-roads ” (4 Curwen’s Stat. 2990), which was in force at the time of the attempted transfer.
The first two sections of that act, and all which bear upon the question, are as follows:
“ Seo. 1. That any turnpike or plank-road company, having their road located or constructed, or having the corporate right to construct any such road through or into any county or counties of this state, may relinquish and transfer to the commissisioners of any such county or counties the whole or any part of their said road,, together with all rights and privileges appertaining thereto; provided, that any such transfer to the commissioners of any county shall be limited to the part of such road within the boundaries of such counties respectively; provided, that such transfer shall be without consideration.
“ Seo. 2. Such transfer shall be evidenced by the execution of a. written declaration, signed by the president or other principal officer, and the secretary or other recording officer, *and under the seal of said company, and shall take effect and have full force, on depositing with the auditor of the county within which said relinquished road may lie, the said written declaration, or a copy thereof, which written deelai’ation, so deposited as aforesaid, shall thereupon be entered by said auditor upon his record of roads, or highways, and thereafter such road or part of road shall bounder the control of the county commissioners of the county in *290 which the same may lie, who shall, by a proper order, provide that "the same shall be a public highway, and with the assent of the commissioners of the county in which the road relinquished may lie"
The concluding clause of this second section, “and with the as•sont of the commissioners of the county in which the road relin■quished may lie,” it is admitted by counsel in argument on both ■sides, is nonsensical and ridiculous, if applied to atiything whicn immediately precedes it; but there it is. We are not at liberty to •disregard it, and are bound, if wo fairly may, to give it some significance which shall consist with reason and common sense. What is apparent on the face of this statute suggests the conjecture that this clause under consideration was, while pending in the legislature, added by way of amendment, and was by inadvertence added to the second instead of the first section. But, be that as it may, here it is. It was evidently intended to qualify some of the preceding provisions of the act. It is not consistent with the presumption that the legislative body possessed common sense, to ■say that it qualifies anything which immediately precedes it; and we, therefore, feel ourselves constrained to the conclusion that it ■does qualify, and was intended to qualify, the main purpose, object, and design of the act, which was, under proper restrictions and safeguards, to grant to turnpike and plank-road companies the ■power to transfer in whole or in part their roads, and this clause was added as a limitation on such grant of power.
We are of opinion, then, that the bridge is still a part of the turnpike company’s road, and we will assume that it is the coporate duty of the company to keep the bridge in repair; but does it follow that the relators are entitled to the peremptory writ'? ■820] Whether the corporate duty here sought *to be enforced is a trust within the meaning of the statute, which, with proper •parties, can be enforced by mandamus, is a question which remains •undetermined in this state by any reported case, and as the view which we take of another question hereafter to be named renders it unnecessary for us now to pass upon it, we leave it where we find it. The other question referred to is this: Have the relators .any such beneficial interest in the performance of the alleged corporate duty as entitles them to prosecute this writ? We have .already determined that whatever rights the relators may have under their alleged contract, they must enforce, if at all, by the •Ordinary course of law. With the obligations of the turnpike *291 company, arising out of contract, we have now nothing to do. The relators are a board of county commissioners, and in that character alone they appear in this proceeding. As a board they are an administrative body, and a quasi corporation, with certain limited powers and duties defined by law. As individuals, the members of this board may have an interest, in common with .all other persons domiciled in the state, in the repair of this bridge; but as a board of commisioners, what interest have they? We are unable to find any. Boards of county commissioners are authorized by law to levy taxes and to contract for the building ■of bridges in their several counties, but we know of no law, and we have been cited to none; which gives them any power, supervision, control, or care over, or devolves on them any responsibility for, the bridges of turnpike companies.
The forty-first section of the act of May 1, 1852, “to provide for the creation and regulation of incorporated companies,” etc. (3 Curwen’s Stat. 1889), provides a remedy in case turnpike companies neglect to keep their roads in repair. That remedy, in respect to the bridge in question before us, may possibly be an inadequate one; and if so, it is competent for the legislature to furnish one which will be adequate ; but I hope this will not be done by attempting to enlarge the original jurisdiction of this already overburdened court.

Peremptory writ refused.

Soott, C. J., and Day, White, and Welch, JJ., concurred.